IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| BRIAN JURY, | ) | CASE NO. 3:17CV304 |
| | ) | |
| Petitioner, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| WARDEN CLARK SCOTT, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Brian Jury ("Petitioner" or "Jury") brings this habeas corpus action pursuant to 28 U.S.C. § 2254. Doc. 1. Jury is detained at the Belmont Correctional Institution, having been found guilty by an Erie County, Ohio, Court of Common Pleas jury of two counts of abduction, two counts of rape, one count of felonious assault and four firearm specifications. *State v. Jury*, Case No. 2013 CR 472 (Erie Cty. Common Pleas Ct., filed June 27, 2014). At sentencing, the trial court merged the two abduction counts and the gun specifications and sentenced Jury to three years on the abduction count, eight years for felonious assault, eleven years for each rape count and three years for the gun specification, to be served consecutively, for a total of thirty-six years in prisons. Doc. 8-1, pp. 137-141.

On February 2, 2017, Jury filed his Petition for Writ of Habeas Corpus setting forth seven grounds for relief. Doc. 1, pp. 7-15. He also filed a Motion for evidentiary hearing, discovery and counsel. Doc. 9. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2. As set forth more fully below, Grounds 1, 2, 3, 6, and a portion of Grounds 4 and 7 are procedurally defaulted, the remainder of Ground 7 is not cognizable, and Ground 5 and the remainder of Ground 4 fail on the merits. Thus, the undersigned recommends that Jury's Petition for Writ of Habeas Corpus (Doc. 1) be

1

**DISMISSED in part** and **DENIED in part**.[1]  Jury's Motion for evidentiary hearing, discovery, and counsel (Doc. 9) is **DENIED**.

## I.  Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct.  28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008).

### A.  State Court Action

#### 1.  Underlying Facts

The following summary of underlying facts is taken from the opinion of the Erie County Court of Appeals, Sixth Appellate District of Ohio:[2]

{¶ 3} An eight-day jury trial commenced on June 17, 2014, and the evidence is summarized as follows. On November 1, 2013, at approximately 2:00 p.m., a motorist testified that she was travelling westbound on Strecker Road, in Erie County, Ohio, when she observed a nude female bound and gagged and sitting along the side of the road. The motorist stated that the victim had tightly bound zip ties on her ankles and hands which were purple and that she was cold. She described the victim's mental state as "terror." The motorist called 911.

{¶ 4} The motorist testified that she flagged down a passing vehicle; the driver happened to be an off-duty Erie County sheriff's deputy. Deputy Steve Hammersmith testified that when he approached the victim he observed and [sic] she was very uncomfortable; he took off his T-shirt and slid it down over her arms which were still bound. Hammersmith stated that he removed the heavy tape covering the victim's mouth which also pulled out some of her hair. Deputy Hammersmith stated that the zip ties around her hands and feet were "embedded" in her skin approximately a quarter inch.

{¶ 5} Deputy Hammersmith questioned the victim and discovered that she came from a camper near the roadway. The victim stated that the perpetrator could still be on the premises and that he was armed. Hammersmith stated that he telephoned dispatch with

---

[1]  The grounds in the petition that are procedurally defaulted and not cognizable result in a dismissal; the grounds in the petition that are addressed on the merits result in a denial.

[2]  Jury has not demonstrated by clear and convincing evidence that the state court's findings were incorrect. Accordingly, the state court's findings are presumed correct.  *See* 28 U.S.C. § 2254(e)(1); *see also Railey*, 540 F. 3d at 397.

the additional information. Another passing motorist provided a pair of scissors to remove the zip ties and a neighbor brought out a blanket to cover the victim. Eventually, she was transported by ambulance to the hospital.

{¶ 6} Emergency physician, John Smith, testified that he conducted the initial examination of the victim. Reviewing her chart, Dr. Smith indicated that her chief complaint was that she was raped five to six times. The victim also complained of pain to her wrist, ankle and back. The victim indicated that she had fallen out of a trailer and rolled up a hill. Dr. Smith indicated that the victim's injuries were consistent with being tied up. Dr. Smith further stated that it was a "slam dunk" as far as his belief that the victim had been raped. An objection to the testimony was raised and the court gave a curative instruction. A mistrial based on Dr. Smith's testimony was later requested and denied.

{¶ 7} Dr. Smith clarified that the victim's injuries were consistent with being raped but that he did not conduct the rape exam; he ordered it and it was done by a Sexual Assault Nurse Examiner ("SANE"). Dr. Smith noted that the victim denied drug or alcohol use.

{¶ 8} SANE Julie Young testified that she was called to conduct a rape kit or rape exam on the victim. Young stated that she received a narrative statement from the victim. According to Young, the victim stated that appellant, whom she had met before, was driving by and offered her a ride to the store. Appellant did not stop at the store and had a gun and threatened to shoot her. The victim stated that appellant drove her to a camper, removed her clothing and raped her. Appellant used zip ties to restrain her. Once he left, the victim stated that she rolled out the door and up on to the road where she was found.

{¶ 9} Young testified that she photographed the victim's injuries; the photos were published to the jury and depicted ligature marks on her wrists and ankles, various abrasions, and cellular injury to the victim's vagina (such injury could have occurred during "rough" consensual sex.) Oral, vaginal, and anal swabs were collected as well as hair samples and fingernail scrapings. The kit was transferred to Deputy Daniel Ozech of the Erie County sheriff's department. During cross-examination, Young agreed that she questioned the victim about her drug and alcohol use and that the victim denied using "recreational drugs."

{¶ 10} Lorain Detective Christopher Kovach, testified that his department was contacted regarding a possible kidnapping case involving appellant. According to Detective Kovach, appellant owned various properties in Lorain and his girlfriend lived there. Driving by her home, appellant's work truck appeared to be in the driveway. Zip ties matching the description of those removed from the victim were seized from the truck. A Motorola cell phone was also taken from the console of the truck. Speaking with his girlfriend, police were notified that his motorcycle was not in the garage and that he may be driving it.

{¶ 11} James Wolford, a city of Lorain patrol officer, testified that on November 1, 2013, at approximately 6:15 p.m., and after being informed of the allegations against appellant and his possible location, he observed appellant riding his motorcycle and initiated a stop.

Wolford stated that appellant had a loaded .22 caliber pistol in his breast pocket and a loaded 9 millimeter semi-automatic handgun in his jacket pocket. A knife was found in the saddlebag of the motorcycle and one was found on his person. DNA swabs were taken from appellant.

{¶ 12} Erie County Detective Sergeant Dennis Papineau testified that he acted as a blind administrator of a photo array presented to the victim. In other words, Papineau did not know who the suspect was or even if he was included in the array. Detective Papineau testified that he showed the victim the photo array and that she identified appellant.

{¶ 13} Detective Papineau testified that he then briefly interviewed the victim and photographed her injuries which included scrapes and dirt around her knees and marks on her ankles and wrists. Papineau stated that she was visibly upset.

{¶ 14} Papineau testified that a search warrant was executed for the camper and several items were confiscated including "tie straps," tissues, and multiple types of duct tape. Papineau also obtained search warrants for the appellant's iPhone records through Verizon and the victim's Motorola phone. Detective Papineau stated that there were several text messages between the two phones; those messages, spanning October 30, 2013, to November 1, 2013, were consolidated in an exhibit and admitted into evidence. The gist of the messages was that the victim was inquiring about renting a property in Lorain from appellant. The victim was having trouble locating the house; appellant offered to pick up the victim and show her the house. On November 1, 2013, beginning at 10:37 a.m., the following exchange took place. Appellant to the victim: "Where at." The victim to appellant: "On 18." Appellant to the victim: "Let's go." The victim to appellant: "Putting shoes on now." Thereafter, at 2:54 p.m., from appellant to the victim: "Hope you liked the house, let me know if you're interested."

{¶ 15} Detective Papineau was cross-examined about the texting history between appellant and the victim and her reluctance to acknowledge that she knew him prior to the events of November 1. Papineau stated that the earliest text the records showed was from March 1, 2013. Further, the victim's cell number was stored in appellant's phone and a missed call from her number was placed in July 10, 2013.

{¶ 16} Detective Papineau was questioned regarding a second interview with the victim which he conducted after he had the above information. Detective Papineau admitted that he did not inquire about the fact that in prior interviews, the victim failed to mention that she knew appellant. Further, he did not ask for an explanation of the discrepancy in where the victim was picked up. She stated that she was picked up on 19th Street in Lorain, Ohio, but the text message stated that she was putting on her shoes on 18th Street. The victim did admit that there were prior text messages and that she had spoken with appellant about renting a house.

{¶ 17} Erie County sheriff's deputy Jared Oliver testified that when he arrived on the scene, Deputy Hammersmith and the motorist were assisting the victim. Additional officers and emergency response arrived shortly thereafter. Oliver stated that they searched the camper and the property. Deputy Oliver stated that they ascertained the

suspect's identity from the VIN of a truck on the property and mail in the mail box. At that point they also linked appellant to a Lorain County address and informed police in that jurisdiction of the investigation. Deputy Oliver further testified that the victim informed him that appellant had been in a white work truck; neighbors stated that he worked for a gas company. At that point, Deputy Oliver found an Airgas statement in the camper and deduced that appellant worked for that company. Through Airgas, they acquired appellant's cell phone number. Deputy Oliver testified that he called appellant's cell phone and left a message in order to get a GPS coordinate; the coordinate indicated that the phone was in Lorain County.

{¶ 18} Deputy Oliver testified that a few months into the investigation he learned that the victim had ingested heroin the day before the incident; he was also aware of her use of Oxycodone and Percocet. Oliver stated that the victim's drug use did not change either the way the crime was investigated or her status as a crime victim.

{¶ 19} Deputy Oliver testified regarding several photographs taken at the scene including photos of a tarp laid out on the ground near the camper. Oliver stated that the grass underneath the tarp was "fresh" so it had not been there long.

{¶ 20} Deputy Oliver was cross-examined about the victim's version of the events. Specifically, the fact that she initially denied drug use and downplayed her prior contacts with appellant.

{¶ 21} Lorain Police Detective Steyven Curry testified that he interviewed the victim at the hospital. The audiotape of the interview was played for the jury. Curry was cross-examined about the victim's version of the events including the fact that her story made it look like appellant picking her up to give her a ride to the store was a random event and that they had not been in recent contact. The victim failed to mention she had been exchanging text messages with appellant that morning about looking at a house for rent. Detective Curry was also questioned about the fact that the victim was introduced to appellant through a mutual friend who was a heroin addict and prostitute.

{¶ 22} The victim testified that she first met appellant in 2012, and was introduced by their mutual friend K.A. At the time, the victim knew appellant as "Greg." Around that time he showed her an apartment. In October 2013, the victim stated she contacted appellant about renting a house. She had telephone and text contact with him in the days leading up to November 1, 2013. The victim testified that she and her boyfriend unsuccessfully attempted to locate the house; appellant agreed to show it to her the next day.

{¶ 23} The victim testified that the next day she walked one street over to see if a friend had moved from her residence yet; the friend was gone so the victim decided to walk to the store. The victim testified that appellant pulled up and offered to drive her to the store; she agreed and got in the truck. The victim stated that appellant did not stop at the store and when she asked where they were going he said to "shut the f*ck up," that he had a gun, and not to move.

5

{¶ 24} Once in Erie County, the victim stated that he stopped and took her into a camper. He was carrying a gun. Once inside, the victim testified that appellant took off her clothing and threatened to shoot her if she did not comply. Appellant then placed a knife to her throat and began raping her. The victim stated that he eventually used zip ties to restrain her arms and legs. Her mouth was duct-taped shut.

{¶ 25} The victim testified that appellant raped her five times and that in between he went outside for approximately 15 to 20 minutes. The victim could not see what he was doing but stated that it sounded like he was moving vehicles around. Appellant eventually left; he took the victim's cell phone.

{¶ 26} At that time, [the victim] stated that she rolled off the bed and used her head to move a suitcase and to open the door. [She] then rolled out of the camper and fell to the ground. [She] stated that she rolled in the rocks and up to the highway where a passing motorist spotted her and stopped. An off-duty sheriff's deputy also stopped.

{¶ 27} The victim denied that any of the treating medical personnel asked about her drug usage. She admitted that she did not tell them, but stated that she was traumatized from the events. Appellant testified that Greg (appellant) was the perpetrator and denied that they had a prior sexual relationship.

{¶ 28} During cross examination, the victim stated that she met K.A. approximately two and one-half years ago and appellant two years ago. The victim also admitted that appellant was at her home two months prior to the incident. The victim stated that her boyfriend did not like appellant and he did not want him to know where they lived so that is why she met him on the next street. The victim indicated that they recently moved to a neighboring house and appellant had not been there.

{¶ 29} The victim was then questioned about a series of text messages on the morning of the incident. At 9:51 a.m., she texted appellant that she could not find the house he had available for rent. At 10:26 a.m., appellant asked if the victim wanted him to pick her up to show her; she responded yes. It was determined that they would meet immediately. She texted him to meet her on 18th Street, and she testified that she told him she was putting on her shoes to allow time for her to get to the store. The victim stated that she was surprised that he arrived so quickly. The last text message was sent from appellant to the victim at 2:54 p.m. that day and read: "Hope you liked the house. Let me know if you're interested." The victim stated that at that time she had been found bound on the side of the road.

{¶ 30} Other than the two times she was looking for housing, the victim denied having any other contact with appellant. When confronted with the cell records which showed several additional contacts, she stated that K.A. had used her phone because she did not have one.

{¶ 31} Forensic scientists testified regarding the chain-of-custody and testing done on biological materials taken from the rape kit contents, appellant, and swabs from various other pieces of evidence. The reports, that were testified to and admitted into evidence,

showed that the DNA from the vaginal swabs came from the victim and appellant. Further, the victim could not be excluded as a contributor to the DNA found from the swab of the knife blade. The statistical likelihood was one in 5,271 unrelated individuals.

{¶ 32} Following the presentation of the state's evidence, appellant's counsel moved for a directed verdict on the attempted murder charge arguing that the evidence failed to show that appellant ha[d] a specific intent or purpose to cause the victim's death. The court denied the motion.

{¶ 33} Appellant presented evidence in support of his case. An employee for Airgas testified that she coordinates jobs with technicians, including appellant who had worked for the company since 2011. She testified that on November 1, 2013, at 10:40 a.m., she emailed appellant about a service call in Elyria, Ohio. She was informed that he arrived there at approximately 12:30 pm., or around lunchtime.

{¶ 34} During cross-examination, the Airgas employee said she verified the timing through a driver who saw appellant there and another technician. She was then questioned about another Airgas employee whose log indicated that appellant arrived at 2:30 p.m.; she clarified that she got the information from her "liaison" at the company and not from personal knowledge.

{¶ 35} Toxicologist Robert Forney testified regarding the results of the victim's urine drug screen taken upon arrival at the hospital. The results were positive for various controlled substances, including heroin, and alcohol. Regarding the victim's heroin use, Forney testified that based on the level detected it would have been "recent," or within the preceding 12 hours.

{¶ 36} Appellant testified that he met the victim in March 2013, and paid her for sex. Appellant stated that he paid her for sex several more times. Appellant stated that they had intercourse at least ten times at her house and then various times at his rental properties for a total of approximately 20 times from September to November 2013.

{¶ 37} Appellant testified that on the morning of November 1, 2013, he had slept at his fiancée's house in Lorain. At approximately 10:00 a.m., appellant testified that the victim texted that she wanted to see the property he had for rent. Appellant stated that he was in his work vehicle and was about to head out to his farm to get parts for a job he had that day. The victim's texts indicated that she was at her home on 18th Street in Lorain. Appellant stated that he waited in front of her house, she came out and they headed over to the property. Appellant stated that they did not go in the property because he could not find the key. Appellant believed that his set of keys was with a maintenance worker.

{¶ 38} Appellant testified that the victim wanted to exchange rent for sex but that he declined. Appellant did agree to have sex with the victim for money; he stated that she informed him that they could not go back to her house because her brother (actually her boyfriend) was there. Appellant suggested that the victim ride with him to his farm, and that he would drop her off on the way to his job.

{¶ 39} When they arrived at the camper, appellant said that it was cold so he gave the victim a blanket and went out to get the parts for his job. Appellant stated that it had recently rained on some tarps that were covering a picnic table and some tools; the tarps were wet so he laid them on the ground to dry out.

{¶ 40} When he returned to the camper, the victim began performing oral sex. Appellant stated that they had vaginal intercourse and that he ejaculated in her. Once the sex acts were completed and the victim was back in his truck, he opened his wallet to pay her the agreed upon $40. At that point, appellant stated that he discovered that $100 was missing; he confronted the victim who denied taking it. Appellant testified that he made the victim remove her clothing and the $100 fell out of her bra. Appellant stated that at that point, the victim said she wanted $1,000 or she would accuse him of rape.

{¶ 41} Appellant testified that it "escalated" from there and that the victim was screaming and calling him names. He testified that he grabbed the victim's wrists behind her back and put her face-down on a bench. Appellant then grabbed zip ties and secured her wrists; he stated that he tied her feet together because she was kicking him. Because she could still maneuver, appellant hogtied or bound her wrists and ankles together. Appellant stated that she still would not be quiet so he put paper towels in her mouth and duct taped it shut. Appellant then stated that he told her they both needed a "break" and said he would be back in a few hours. Appellant stated that he left at approximately 11:30 to 11:40 a.m.

{¶ 42} Appellant stated that he arrived at his service call in Elyria, Ohio, between 12:30 and 1:00 p.m. Regarding the testimony that he arrived after 2:30 p.m., appellant stated that drivers may put down technically incorrect times based on "stop pay" restrictions. Appellant testified that he finished the job around 2:45 p.m. At that time, he listened to two voicemails from the Erie County Sheriff's Office; the first one stated that police needed to speak with him, listening to the second one he could hear his dog barking so he knew they were at his property. Appellant testified that he panicked and sent a text to the victim's phone stating that he hoped she liked the house and to let him know if she was interested. He stated that he sent it to create an "alibi" or to make it appear that he was not with the victim. Appellant stated that he took his work truck back to his fiancée's house, retrieved two guns and two knives and drove towards the farm on his motorcycle. Approaching his property in Erie County, he observed a sheriff's vehicle in the road; appellant stated that he turned around and ultimately began driving toward his attorney's office when he was stopped and arrested by Lorain police.

{¶ 43} During cross-examination, appellant was questioned about his 2:54 p.m. text message he sent to the victim which he stated was in response to the police voicemails, not based upon his intent to kill her and use the text as an alibi. Appellant was then confronted with his phone records showing that the calls from the deputy were at 3:22 p.m. and 3:24 p.m., which was after he sent the text.

{¶ 44} Appellant agreed that he laid a tarp out "several feet" from the camper where the victim was located. Appellant agreed that he restrained the victim's liberty and did not

free her in a safe place. Appellant denied taking the victim's cell phone. He denied raping the victim.

{¶ 45} K.A. testified that she is a heroin addict and a prostitute and that she has had sex with appellant on a few occasions. K.A. stated that she knew the victim from "prostituting" and they had met at a drug dealer's house. K.A. denied ever using the victim's phone to contact appellant.

{¶ 46} Appellant's final witness was a former co-worker who testified that appellant was a "truthful" person. When cross-examined, he stated that he did not know that appellant carried guns and paid prostitutes for sex.

{¶ 47} Following deliberations, the jury found appellant not guilty of attempted murder, guilty of two counts of rape and not guilty of three counts of rape, guilty of felonious assault, guilty of two counts of abduction, a lesser included of kidnapping. The jury further found appellant guilty of gun specifications as to three of the counts. Appellant was sentenced on August 7, 2014, and this appeal followed.

*State v. Jury*, 2016 WL 1615406, at ** 1-8 (Ohio Ct. App. Aug. 22, 2016).

## 2. Procedural History

On November 14, 2013, an Erie County Grand Jury indicted Jury on one count of kidnapping, R.C. 2905.01(A)(3), with a firearm specification, R.C. 2941.145 (Count 1); one count of felonious assault, R.C. 2903.11(A)(1), with a threat of physical harm specification (Count 2); one count of attempted murder, R.C. 2923.02(A) (Count 3); five counts of rape, R.C. 297.02(A)(2), each count with a firearm specification (Counts 4 - 8); and one count of kidnapping, R.C. 2905.01(A)(4), with a firearm specification, a sexual motivation specification, R.C. 2941.147, and a sexually violent predator specification, R.C. 2941.148 (Count 9).  Doc. 8-1, pp. 5-8.  Jury, through counsel, pleaded not guilty.  Doc. 8-1, p. 9.

On December 6, 2013, Jury submitted a demand for discovery.  Doc. 8-1, p. 10.  The state filed an answer to Jury's demand.  Doc. 8-1, p. 14.  Jury moved to compel discovery, asserting that the state's response was insufficient.  Doc. 8-1, pp. 21-22.  On February 12, 2014, Jury moved for disclosure of exculpatory and impeachment evidence.  Doc. 8-1, p. 24.  The state filed a supplemental answer.  Doc. 8-1, p. 26.

The case proceeded to trial.  On June 26, 2014, the jury found Jury guilty of two counts of abduction (lesser included offenses in the kidnapping counts), two counts of rape, one count of felonious assault, and four firearm specifications.  Doc. 8-1, p. 68.  The trial court ordered briefing with respect to the issue of the merger of allied offenses.  Doc. 8-1, p. 68.  At sentencing, the trial court merged the two abduction counts and the gun specifications and sentenced Jury to three years on the abduction count, eight years for felonious assault, eleven years for each rape count and three years for the gun specification, to be served consecutively, for a total of thirty-six years in prisons.  Doc. 8-1, pp. 137-141.

### B. Direct Appeal

Jury, through new counsel, timely appealed to the Ohio Court of Appeals.  Doc. 8-1, pp. 142, 153.  In his brief, he raised the following assignments of error:

1. The verdict is against the manifest weight of the evidence.

2. The trial court erred when it failed to give a lesser included charge of sexual battery.

3. The trial court erred in denying Defendant/Appellant's motion for mistrial insofar as the prejudice created by the testimonial evidence of the expert witness outweighed its probative value.

4. The testimony of Christine Green was wrongfully bolstered by inadmissible hearsay statements.

5. Defendant/Appellant's sentence should be vacated as the trial court failed, as a matter of law, to make specific findings of fact before imposing consecutive sentences pursuant to Ohio Revised Code §2929.14(C)(4).

6. Defendant/Appellant's sentence should be vacated as it is excessive, unreasonable and contrary to law.

Doc. 8-1, p. 154.  On April 22, 2016, the Ohio Court of Appeals affirmed the trial court's judgment.  Doc. 8-1, pp. 235-262.  Jury did not file an appeal.

### C. State Habeas Corpus

On May 14, 2015, Jury, pro se, filed a petition for writ of habeas corpus with the Ohio Court of Appeals, Seventh District, arguing that the Erie County Court of Common Pleas lacked jurisdiction because there was "never an initial charging instrument." Doc. 15-1, p. 3; *Jury v. Miller*, Case No. 15 BE 33, 2015-Ohio-2998, 2015 WL 4541984, at *1 (Ohio App. July 22, 2015). The Ohio Court of Appeals dismissed the petition, explaining, "[h]abeas corpus is not available to challenge either the validity or the sufficiency of an indictment" and finding that Jury had an adequate remedy: to raise this issue in his direct appeal, which was, at that time, still pending. *Id*.

Jury appealed this decision to the Ohio Supreme Court. Doc. 15-1, pp. 80-81. On May 19, 2016, the Ohio Supreme Court affirmed the decision of the Ohio Court of Appeals. *Jury v. Miller*, Case No. 2015-1339, 147 Ohio St.3d 49 (Ohio May 19, 2016).

### D. Post-Conviction Petition to Vacate and Set Aside Sentence

On August 13, 2015, after his notice of direct appeal but before filing his brief on direct appeal, Jury, pro se, filed a petition to vacate or set aside judgment of conviction or sentence pursuant to R.C. § 2953.21 with the trial court. Doc. 8-1, p. 342. He raised the following grounds for relief:

> 1. Violation of Fourth and Fourteenth Amendments of U. S. Constitution; Article One, Section Ten and Sixteenth, Ohio Constitution. (Trial court lacked subject matter jurisdiction to try case.)
>
> 2. Violation of Fourth Amendment of U.S. Constitution; Article 1, Section 14, Ohio Constitution. (Illegal search and seizure, warrantless arrest)
>
> 3. Violation of Fifth and Sixth Amendment of U.S. Constitution; Article 1, Section 10, Ohio Constitution. (Counsel advised and compelled defendant to take the stand and incriminate himself.)
>
> 4. Violation of 4th, 5th, 6th Amendments of U.S. Constitution; Article 1, Sections 5, 10, 14 of Ohio Constitution. (Ineffective assistance of trial counsel)

5. Violation of 5th and 14th Amendments of U.S. Constitution; Article 1, Section 16, Ohio Constitution. (Brady violation, prosecutorial misconduct).

6. Violation of 8th Amendment of U.S. Constitution; Section 9, Article 1, Ohio Constitution. (Trial court utilized erroneous information at sentencing to justify maximum sentence.)

7. Violation of 5th and 14th Amendments of U.S. Constitution; Article 1, Section 16 of Ohio Constitution. (Trial court abused its discretion in failing to recognize need for a change of venue based on pretrial publicity.)

Doc. 8-1, pp. 343-355.  The state responded (Doc. 8-1, p. 382) and Jury filed a reply (Doc. 8-1, pp. 390-392).  On May 10, 2016, the trial court considered the arguments raised in Jury's petition and reply brief and denied them all.  Doc. 8-1, pp. 404-405.  Jury did not appeal this decision.

### E. Application to Reopen Pursuant to Ohio App. R. 26(B)

On June 20, 2016, Jury, pro se, filed an Application to Reopen pursuant to Ohio App. R. 26(B) with the Ohio Court of Appeals.  Doc. 8-1, p. 406.  He alleged that he received ineffective assistance of appellate counsel when appellate counsel failed to set forth the following assignments of error:

1. Erie County lacked subject matter jurisdiction.

2. Appellate counsel failed to address the ineffective assistance of trial counsel and error of court for their failure to challenge the competency of alleged victim Christine Green's testimony and/or statements made of the alleged incident.

3. Appellate counsel failed to raise ineffective assistance of trial counsel for his failure to address, investigate, object, etc. throughout proceedings.

4. Appellate and trial counsel failed to challenge the validity and sufficiency of the indictment, and/or variance from the indictment.

5. Defendant was compelled to testify.

6. Defendant denied effective assistance of counsel for failure to investigate prosecutions (forensic) evidence and explore "mystery" semen donor.

7. Defendant was denied compulsory process, including the right to effective confrontation of Green (recalling her to the stand after the statement between Green and Det. Curry was played.)

8. Prosecutorial misconduct—knowingly used false testimony, and committed "Brady" violations—denying Due Process.

Doc. 8-1, pp. 408-415. On August 19, 2016, the Ohio Court of Appeals issued an opinion

denying Jury's application to reopen. Doc. 8-1, pp. 444-453.

On September 16, 2016, Jury, pro se, filed an appeal to the Ohio Supreme Court. Doc. 8-

1, p. 264. In his memorandum in support of jurisdiction, Jury raised the following propositions

of law:

I. An otherwise unlawful arrest can not be overcome with a belated injection of theory; nor can a citizen be denied a probable cause hearing on such a "warrantless arrest" pursuant to the Fourth and Fourteenth Amendments of the United States Constitution.

II. Due Process was violated for the courts, counsel, and prosecutor for failing to challenge competency of alleged victim; prosecutorial misconduct in his failure to correct false testimony, and provide "timely" disclosure of exculpatory evidence pursuant to the Fifth and Fourteenth Amendments of the United States Constitution.

III. Appellate/trial counsel failed to act as counsel guaranteed pursuant to the Sixth Amendment of the United States Constitution.

IV. Appellant was denied compulsory process and was compelled to testify pursuant to the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.

V. Appellant was subjected to cruel and unusual punishment pursuant to the Eighth Amendment of the United States Constitution.

Doc. 8-1, p. 267. On November 23, 2016, the Ohio Supreme Court declined jurisdiction

pursuant to S.Ct.Prac.R. 7.08(B)(4). Doc. 8-1, p. 341.

### F. Federal Habeas Petition

On February 2, 2017, Jury, pro se, filed his Petition for a Writ of Habeas Corpus. Doc. 1.

He listed the following grounds for relief:

**Ground One**: Erie County lacks subject matter jurisdiction.

**Supporting facts**: (1) Instigating officer, Chief Deputy Oliver failed to file or to have filed a charging instrument prior to or subsequently after Petitioner's arrest violating Rules of Criminal Procedure #1-6. (2) Arresting officer, Det. Wolford, made an arrest, on

the premise of an alleged warrant, later to be discovered did not exist, nor did the complaint filed in Lorain Municipal Court give reason for probable cause to support lawful arrest. (3) Erie County used fruits of an unlawful arrest to perpetuate an indictment. (4) Erie County violated law when it empowered the grand jury to hand-down an indictment without a lawful charging instrument.

**Ground Two**: An otherwise unlawful arrest cannot be overcome with a belated injection of theory; nor can a citizen be denied a probable cause hearing on such a "warrantless arrest."

 **Supporting facts**: (1) Law forbids a belated injection of theory outside of trial. (2) Law forbids a citizen to be denied a probable cause hearing on a warrantless arrest. (3) Exclusionary rule applies to unlawful arrested criminal defendants whose arresting officers' acted with deliberate intent violating the Fourth Amendment.

**Ground Three**: Due Process was violated for the courts, counsel, and prosecutor for failing to challenge competency of alleged victim; prosecutorial misconduct in his failure to correct false testimony, and provide "timely" disclosure of exculpatory evidence.

 **Supporting facts**: (1) Trial counsel and prosecutor knew or should have known from the toxicology report that alleged victim was well beyond legally impaired. (2) Judge should have been able to recognize from the evidence/trial testimony a competency issue with alleged victim. (3) Prosecutor allowed false testimony to be left uncorrected:
 a. Instigating and arresting officer's testimony that a warrant was issued to secure Defendant leading to an ultimate conviction and incarceration. He knew or should have known that one was never issued.
 b. Prosecutor knew or should have known of testimony of alleged victim was fabricated in all or in part.
 c. Prosecutor lead [sic] witness to believe she was held captive for five to six hours, knowing such testimony was false.
 d. Prosecutor withheld evidence, and provide "timely" disclosure.

**Ground Four**: Appellant/trial counsel failed to act as counsel guaranteed.

 **Supporting facts**: (1) Counsel failed to investigate forensic evidence. (2) Counsel failed to call/subpoena/recall witnesses to stand. (3) Counsel failed to do elementary investigation on alleged warrant, and challenge evidence admitted unlawfully. (4) Counsel failed to request a change of venue, knowing of pretrial publicity and inflammatory articles (printed). He failed to conduct a diligent voir dire/request the Court to do the same, knowing of heavy trial publicity – inquiring of just how much jurors knew. (5) Failure to request continuance after receiving results of urine sample, and potential exculpatory evidence six days before trial. (6) Appellate counsel failed to request voir dire and preliminary hearings to investigate possible issues. (7) Appellate counsel's abuse of discretion by improperly raising issues on Petitioner's direct appeal, coaxing bias.

**Ground Five**: Appellant was denied compulsory process and was compelled to testify.

**Supporting facts**:  (1) Counsel instead of requesting a short recess called Petitioner to stand at request of judge. (2) Judge improperly/unprofessionally went outside of his judicial authority by recommending to counsel to advise him to call Petitioner to the stand. (3) Appellant was not afforded favorable testimony prior to him having to give testimony.

**Ground Six**: Appellant/Petitioner was subjected to cruel and unusual punishment.

**Supporting facts**: (1) Judge failed to make specific findings of fact before imposing consecutive sentences. (2) Judge's sentencing was based on bias and prejudicial findings which have been proved wrong. (3) Petitioner's sentence was excessive, unreasonable, and contrary to law.

**Ground Seven**: Fundamental unfairness throughout trial proceedings created several Due Process violations against Petitioner.

**Supporting facts**: (1) Appellate counsel's failure to have transcribed voir dire has deprived of supporting any potential claims on the following:
a. Change of venue.
b. Prejudice.
c. Ineffective assistance of counsel claim(s).
d. Fraud on the court.
e. Impartial jury/juror.
(2) Appellate counsel's failure to have transcribed preliminary hearings deprived petitioner supporting other various claims. (3) Petitioner's due process was violated by being "prevented" from presenting evidence to the jury through the court(s) and counsel(s). (4) The above courts promoted unfairness by allowing/affirming a belated injection of theory and/or investigating the probable cause for the initial arrest, by justifying it with an unconstitutional case law. (5) Petitioner was prejudiced from the cumulative effect doctrine.

Doc. 1, pp. 7-15.  Attached to his Petition, Jury submitted brief in support.  Doc. 1-1.

Respondent filed a Return of Writ on May 11, 2017 (Doc. 8), and a Corrected Return of Writ on

August 10, 2017 (Doc. 15).  On June 16, Jury filed a Motion for evidentiary hearing, discovery

and counsel (Doc. 9), filed his Traverse to Respondent's Corrected Return of Writ on August 28,

2017 (Doc. 17), and a Supplement to his Traverse on October 10, 2017 (Doc. 18).

## II. Standard of Review under AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a

petitioner must meet certain procedural requirements in order to have his claims reviewed in

federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006).

"Procedural barriers, such as statutes of limitations and rules concerning procedural default and

exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."

*Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes

confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v.*

*Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are

"still available at the time of the federal petition." *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S.

107, 125 n.28 (1982)). In contrast, when state court remedies are no longer available, procedural

default rather than exhaustion applies. *Williams*, 460 F.3d at 806.

**Exhaustion.** A federal court may not grant a writ of habeas corpus unless the petitioner

has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state

defendant with federal constitutional claims must fairly present those claims to the state courts

before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b), (c); *Anderson v.*

*Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see*

*also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d

873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a

habeas petition that was not 'fairly presented' to the state courts"). A constitutional claim for

relief must be presented to the state's highest court in order to satisfy the fair presentation

requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902

F.2d 480, 483 (6th Cir. 1990). In order to satisfy the fair presentation requirement, a habeas

petitioner must present both the factual and legal underpinnings of his claims to the state courts.

*McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the petitioner must

present his claims to the state courts as federal constitutional issues and not merely as issues

arising under state law.  *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).

**Procedural Default.**  Procedural default may occur in two ways.  *Williams*, 460 F.3d at 806.  First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id*.  In *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error.  *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848).  "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*.  While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state

courts constitutes a procedural default of those claims that bars federal court review.  *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750.

**Merits Review**.  In order to obtain habeas relief under 28 U.S.C. § 2254(d), a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involving an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause).  *Id*.

"Under the 'contrary to' clause, a federal habeas court may grant a writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id*. at 413.  "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, as well as legal principals and standards flowing from Supreme Court precedent.  *Id*. at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent.  *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005).  If the Supreme Court has not addressed the

petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

In determining whether the state court's decision involved an unreasonable application of law, the court employs an objective standard. *Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

### III. Claim Analysis

Jury sets forth seven grounds for relief in his Petition. Doc. 1, pp. 7-15. The undersigned recommends the Court find that Grounds 1, 2, 3, 6, and a portion of Grounds 4 and 7 are procedurally defaulted, the remainder of Ground 7 is not cognizable, and Ground 5 and the remainder of Ground 4 fail on the merits.

### A. Ground 1 is procedurally defaulted

In Ground 1, Jury argues that (1) Erie County, the county that he was tried in, lacked subject matter jurisdiction because he was arrested without a charging document; (2) the complaint filed against him in Lorain Municipal Court lacked probably cause to arrest him; (3) Erie County used fruits of an unlawful arrest to perpetuate an indictment; and (4) Erie County empowered a grand jury to hand down an indictment without a lawful charging instrument. Doc. 1, p. 7; Doc. 1-1, p. 40. All these arguments challenge proceedings prior to the grand jury

indictment and are the basis for Jury's argument that the trial court lacked subject matter jurisdiction over him.

Ground 1 is procedurally defaulted. Jury raised Ground 1 as his sole ground for relief in his state habeas petition. Doc. 15-1, pp. 3, 5-9. The Ohio Court of Appeals dismissed his petition because his claim could not be challenged via a habeas petition; instead, it must be raised on direct appeal. *Jury*, 2015 WL 4541984.[3] Jury appealed and the Ohio Supreme Court affirmed. *Jury*, 59 N.E.3d 1280. Both state courts' rulings applied a procedural bar that is an independent and adequate state ground for denying relief and which is firmly established and regularly applied by the state courts. *See McDougald v. Warden, Lebanon Corr. Inst*., 2012 WL 4506392, at *8 (S.D. Ohio Oct. 1, 2012) (the petitioner's claim challenging his charging indictment was procedurally defaulted; the petitioner raised the claim in a state habeas petition and the state court applied a procedural bar when it dismissed his petition on the grounds that the petitioner should have raised it on direct appeal, not via a state habeas petition); *Orr v. Mack*, 700 N.E.2d 590 (Ohio 1998) (affirming the court of appeals' dismissal of a state habeas petition; "habeas corpus is not available to attack the validity or sufficiency of the charging instrument."). Because Jury failed to properly present his claim to the Ohio courts and the Ohio courts applied a firmly established and regularly applied procedural bar in denying relief, his claim is procedurally defaulted. *See Williams*, 460 F.3d at 806.

Jury also raised Ground 1 in his petition to vacate or set aside judgment of conviction or sentence, Doc. 8-1, p. 342, but the trial court applied Ohio's res judicata bar and denied his petition, Doc. 8-1, pp. 404-405. Jury never appealed this decision; thus, he procedurally defaulted there, too, because he failed to pursue his claim through the state's ordinary appellate review procedures. *Williams*, 460 F.3d at 806. Finally, although Jury discussed this claim in his

---

[3] At the time the Ohio Court of Appeals dismissed Jury's state habeas petition, Jury's direct appeal was still pending. He did not seek leave to add this ground to his direct appeal.

Rule 26(B) Application, the claim presented there was an ineffective assistance of appellate counsel claim for failing to challenge Jury's charging instrument on direct appeal. Doc. 8-1, pp. 407-408. Presenting a challenge to a charging instrument in a Rule 26(B) Application as an attempt to show ineffective assistance of appellate counsel for not raising the issue on direct appeal does not preserve the underlying claim as a stand-alone constitutional claim. *See* Ohio App. R. 26(B) (A Rule 26(B) Application for Reopening must be based on a claim of ineffective assistance of appellate counsel); *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) ("[A] Rule 26(B) application based on ineffective assistance cannot function to preserve the underlying substantive claim" because "the two claims are analytically distinct[,]" quoting *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005) (internal quotation marks omitted)). Thus, when the Ohio Court of Appeals considered and rejected Jury's Rule 26(B) Application alleging ineffective assistance of counsel due to alleged deficiencies in the charging instrument, it considered the claim based on his assertion that appellate counsel was ineffective for not raising it, and not as a stand-alone constitutional claim. Doc. 8-1, pp. 445-448, 452. Thus, in all these ways, Jury procedurally defaulted Ground 1.

To overcome the procedural default bar, Jury must show cause for his default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if his claims are not considered. *See Coleman*, 501 U.S. at 750.

Jury does not show cause to excuse his procedural default. To the extent appellate counsel's failure to raise this claim on direct appeal could serve as cause, the Ohio Court of Appeals found that appellate counsel was not ineffective for failing to raise a claim that the state trial court lacked jurisdiction because of the alleged irregularities and violation of Ohio Crim.R.3 prior to the grand jury indictment. Doc. 8-1, pp. 446-448. The Ohio Court of Appeals' finding

21

was not unreasonable; there was probable cause to arrest Jury and the state court proceedings did not violate Crim.R.3.  *See* Doc. 8-1, pp. 446-668.  *See also State v. Luther*, 2005 WL 517473, at *2-3 (Oh. Ct. App. March 4, 2005) (rejecting the defendant's argument that the trial court lacked subject matter jurisdiction because there was no complaint in the record, explaining that minor criminal prosecutions may initiate via complaint per Crim.R.3, but "[f]elonies, such as rape, may only be initiated by indictment of the grand jury" and, therefore, "the existence of a complaint by a complaining witness is irrelevant in regards to the trial court's subject matter jurisdiction in Luther's [rape] case.").  And "it has been long settled that 'the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer.'"  *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002).  Finally, Jury's claim that the grand jury's indictment was improper because it was based on evidence obtained through an illegal search and seizure in violation of his Fourth Amendment right fails because the exclusionary rule of the Fourth Amendment does not apply to grand jury proceedings.  *Calandra v. United States*, 414 U.S. 338, 349 (1974).

Jury offers no specifics with respect to how he would suffer a fundamental miscarriage of justice if the Court does not review his claim.  Doc. 17, p. 19.  To demonstrate a miscarriage of justice, a petitioner must make a showing of actual innocence.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  Jury does not show actual innocence.  Indeed, Jury testified at trial that, on the day of the crime, he had arranged to meet the victim and drove to pick her up; he had a gun in his car; he drove the victim to his camper and had sex with her; he hog-tied the victim with zip ties while she was naked; he stuffed her mouth with tissues and put duct tape over her mouth, using a knife; he drove off, leaving her tied and naked in his camper; and that, upon receiving a voicemail from the police a few hours later, he panicked and sent the victim a text message "trying to create

some sort of alibi ... or try to make it look like I was never with her."  See, e.g., Doc. 8-2, pp. 845-846, 849-850, 855-859, 862, 915, 920, 924, 928-929, 945.

Ground 1 is procedurally defaulted.

## B. Ground 2 is procedurally defaulted

In Ground 2, Jury argues that he was denied a probable cause hearing on his alleged unlawful arrest, a "belated injection of theory" was used to overcome his alleged unlawful arrest, and the Fourth Amendment's exclusionary rule applied to him, an unlawfully arrested defendant.[4]  Doc.  1, pp. 8-9; Doc. 1-1, p. 46.  For the same reasons explained above, Ground 2 is procedurally defaulted and Jury cannot show cause, prejudice, or a fundamental miscarriage of justice to overcome the procedural bar.[5]

## C. Ground 3 is procedurally defaulted

In Ground 3, Jury argues that his due process rights were violated when the court, his trial counsel and the prosecutor failed to challenge the competency of the victim and when the prosecutor committed misconduct by failing to correct false testimony and timely disclose exculpatory evidence.  Doc. 1, p. 10.

All Jury's claims in Ground 3 are procedurally defaulted.  Jury states that he raised these issues in his Rule 26(B) Application (Doc. 1-1, p. 52); however, they were not properly presented to the state courts as stand-alone constitutional claims because, as part of Jury's Rule 26(B) Application, they were raised only as ineffective assistance of counsel claims.  *See Davie*,

---

[4]  Jury concedes, "This issue was raised only to the Supreme Court of Ohio" in his appeal of the Ohio Court of Appeals' decision denying his Rule 26(B) Application.  See Doc. 8-1, p. 267.  It appears as though he is referring to his "injection theory" argument, which was first so-named in his brief to the Ohio Supreme Court.  These arguments are indistinguishable from the arguments Jury presented in Ground 1.

[5]  Jury does not present a Fourth Amendment claim with respect to the evidence presented against him at trial, which would implicate the rule in *Stone v. Powell*, 428 U.S. 465, 494 (1976) ("where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.").  Jury only alleges a Fourth Amendment violation based on the evidence used to obtain an indictment.

547 F.3d at 312 (raising claims in a Rule 26(B) Application is insufficient to preserve stand-alone constitutional claims). Jury did raise his exculpatory evidence claim in his post-conviction petition (Doc. 8-1, p. 351), but did not appeal the trial court's decision denying his petition. *See Williams*, 460 F.3d at 806 (claims must be pursued through the state's ordinary appellate review procedures).

Jury cannot show cause to excuse his procedural default. To the extent that ineffective assistance of appellate counsel could serve as cause, the Ohio Court of Appeals rejected the arguments presented by Jury. It explained that Jury's challenge to the victim's competency described a witness credibility issue. Doc. 8-1, p. 449. Jury had challenged the victim's ability to recall events due to the fact that she was under the influence of mind-altering drugs at the time of the crime and her memory was impaired. Doc. 8-1, pp. 409-410; Doc. 1-1, p. 52, 58; Doc. 17, p. 22. The Ohio Court of Appeals accurately stated that this is a witness credibility issue; it is not a competency issue. *See, e.g.,* R.C. 2317.01, Evid. R. 601 ("Every person is competent to be a witness except *** [t]hose of unsound mind ... who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or relating them truly."); *State v. Grahek*, 2003 WL 21196544, at *4 (Oh. Ct. App. May 22, 2003) (rejecting a defendant's claim that the competency of a witness (who admitted that he had lied while on the stand, tells people what they want to hear, has learning problems and takes medication) should have been assessed, explaining that the issue is credibility, not competency); *State v. Madison*, 2007 WL 2009537, at *4-5 (Oh. Ct. App. July 12, 2007) (witness's history of crack cocaine use but no mind-altering drug use at the time of testimony did not render witness incompetent to testify, noting that "imperfect recollection goes to the credibility of a witness" rather than competency); *State v. Carsten*, 1995 WL 234163, at *4 (Oh. Ct. App. Apr. 20, 1995) (witness's drug use and prior criminal record go to credibility, not competency). The victim's toxicology

24

report revealing the drugs and medications she had taken around the time of the crime were thoroughly discussed at trial.  Doc. 8-2, pp. 874-909.  Defense counsel repeatedly referred to the victim's toxicology report, her admitted use of heroin, and the inconsistencies in statements she made to the hospital, police and at trial.  *See, e.g.*, Doc. 8-2, pp. 508-509, 510-511, 1105-1109. Jury does not explain how the Ohio Court of Appeals' decision was unreasonable.  Neither the trial court nor defense counsel committed error by not challenging the victim's competency to testify.

Nor can ineffective assistance of appellate counsel serve as cause to excuse procedural default of Jury's remaining claims, i.e., that the prosecutor failed to correct false testimony and failed to "timely" disclose exculpatory evidence.  The Ohio Court of Appeals quickly dispensed with these claims.  It noted that the alleged "false testimony" Jury complained of is witness testimony and reiterated that the credibility of a witness is determined by the jury.  Doc. 8-1, p. 452.  The Ohio Court of Appeals also observed that Jury did not identify any evidence that the state had in its possession that it did not provide.  Doc. 8-1, p. 452.  Jury complains that he received the victim's urine sample late (Doc. 8-1, p. 414, Doc. 1-1, p. 59), but does not dispute that he received the evidence prior to trial.  Evidence regarding the toxicology report run on the victim's urine sample was presented by Jury at trial.  See, e.g., Doc. 8-2, pp. 874.  Jury also admits that the state provided him with a communication from Buckeye Molded Products estimating that Jury had been there around 12:30 p.m. to 1:00 p.m.  Doc. 1-1, p. 59.  This evidence was also received prior to trial and discussed at trial.  Doc. 8-2, pp. 828-829.

Ground 3 is procedurally defaulted.

**D. A portion of Ground 4 is procedurally defaulted and the remainder fails on the merits**

In Ground 4, Jury argues that trial counsel was ineffective because counsel failed to investigate, call witnesses, request a change in venue, conduct diligent voir dire, and request a continuance after receiving results of a urine sample six days before trial, and that appellate counsel was ineffective for failing to request voir dire and preliminary hearing transcripts and by failing to raise issues on appeal, "coaxing bias."  Doc. 1, p. 11.

### 1. Ineffectiveness of trial counsel claims are procedurally defaulted

Jury's claims regarding trial counsel's alleged ineffectiveness for failing to investigate, call witnesses, request a change in venue and conduct diligent voir dire are procedurally defaulted.  First, although he raised these claims in his Rule 26(B) Application as reasons appellate counsel was ineffective, that did not preserve these claims as stand-alone ineffective assistance of trial counsel claims.  Moreover, as the Ohio Court of Appeals explained in denying his Rule 26(B) Application, Jury referenced evidence outside the record in support of his claims and a Rule 26(B) Application is not the proper vehicle to challenge errors evidenced outside the record.  Doc. 8-1, pp. 450, 452 (Ohio Court of Appeals' decision); Doc. 8-1, p. 410 (Jury's Rule 26(B) Application wherein he states that his ineffective assistance of appellate counsel claim for failing to raise ineffective assistance of trial counsel on direct appeal is based on evidence outside the record); *see State v. Alsip*, 2011 WL 303834, at *1 (Oh. Ct. App. Jan. 24, 2011) (claims based on evidence outside the record are barred in a Rule 26(B) Application); *State v. Coleman*, 707 N.E.2d 467, 483 (Ohio 1999) (facts not in the record used to support ineffective assistance of counsel must be brought in a post-conviction petition under R.C. 2953.21).

Although Jury raised claims of ineffective assistance of trial counsel in his state post-conviction petition pursuant to R.C. 2953.21 (Doc. 8-1, p. 348), his petition was denied and Jury did not appeal.  Thus, these claims are procedurally defaulted because he failed to pursue his claims through the state's proper appellate review procedures.  *See Williams*, 460 F.3d at 806.

Jury does not allege cause to excuse his procedural default for failing to appeal the trial court's denial of his post-conviction petition. Nor can he show that he was prejudiced. To the extent Jury alleges trial counsel was ineffective for failing to perform "elementary investigation on [the] alleged warrant" and to challenge evidence admitted unlawfully (Doc. 17, p. 25), these claims fail for the reasons explained by the Ohio Court of Appeals (Doc. 8-1, pp. 446-448) and in the undersigned's discussion of Ground 1, supra. His contention that, "singularly and collectively, the cumulative effect of these errors operated to produce a trial that was fundamentally unfair" (Doc. 17, p. 26) is not specific or compelling.

Jury cannot show cause, prejudice or manifest injustice to overcome the procedural bar; these claims are procedurally defaulted.

### 2. Jury's first ineffective assistance of appellate counsel claim is procedurally defaulted and/or fails on the merits and his second fails on the merits

Jury raised his first ineffective assistance of appellate counsel claim—that appellate counsel was ineffective for failing to request voir dire and preliminary hearing transcripts to investigate possible issues—in his Rule 26(B) Application. Doc. 1, p. 11; Doc. 8-1, p. 410. The Ohio Court of Appeals construed this claim as a claim that appellate counsel failed to investigate. Thus, the Ohio Court of Appeals explained that this implicates matters outside the record and, therefore, cannot be considered in a Rule 26(B) Application. Doc. 8-1, pp. 449-450. *See also State v. McGrath*, 2002 WL 1041725, at *3 (Oh. Ct. App. May 16, 2002) (claim that appellate counsel was ineffective for failing to investigate is based on matters outside the record). The Ohio Court of Appeals applied a firmly established and regularly applied state procedural bar and Jury defaulted this claim.

To the extent Jury alleged ineffective assistance of appellate counsel based on counsel's failure to request voir dire and preliminary hearing transcripts, this argument fails. Jury does not

demonstrate that he was prejudiced, as required to show ineffective assistance of counsel.  *See Strickland v. Washington*, 466, U.S. 668 (1984) (a defendant must show that counsel's representation fell below an objective standard of reasonableness and, but for counsel's unprofessional errors, the result of the proceeding would have been different).  Jury does not identify anything that occurred during voir dire or preliminary hearings that he alleges was error, only that appellate counsel did not investigate "possible issues."  Because he cannot show that he was prejudiced by appellate counsel's failure to obtain transcripts of voir dire and preliminary hearings, his claim fails on the merits.

Jury's remaining ineffective assistance of appellate counsel claim is that counsel failed to raise issues on appeal, "coaxing bias."  The Ohio Court of Appeals, after setting forth the standard for ineffective assistance of counsel in *Strickland*, explained that appellate counsel is not required to raise and argue meritless assignments of error, and that counsel cannot be found ineffective for failing to raise every conceivable claim on appeal.  Doc. 8-1, pp. 446, 449.  Instead, appellate counsel must choose the best arguments to present to the court.  Id.  The Ohio Court of Appeals observed that Jury's appellate counsel raised six assignments of error on direct appeal.  Id.  After considering all these raised errors and Jury's alleged errors, it concluded that appellate counsel chose the arguments that appeared to be the strongest, i.e., counsel was not ineffective.  Id. pp. 449-450.  Jury does not explain how the Ohio Court of Appeals' decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  *Harrington*, 562 U.S. at 103.  This claim of ineffective assistance of appellate counsel fails on the merits.

### E. Ground 5 fails on the merits

In Ground 5, Jury argues that he was compelled to testify and denied compulsory process.  Doc. 1, p. 12.  He contends that the trial court, improperly going outside its judicial authority,

28

requested counsel put Jury on the stand prior to one of the other defense witnesses.  Doc. 1-1, p. 76.

Jury's claims fail.  A review of the transcript shows the following.  At 9:07 a.m., defense counsel informed the trial court that the witness he planned to call could not be located and, therefore, could not testify.  Doc. 8-2, p. 830.  The next defense witness to testify was Dr. Forney, who was scheduled to testify at 10:00 a.m., and who was not present at the courthouse at 9:07 a.m.  Id.  When defense counsel explained this issue to the trial court during a sidebar, the trial court suggested that defense counsel put Jury on the stand for an hour, break for Dr. Forney's testimony, and then finish Jury's testimony.  Id.  Defense counsel stated, "That would be good."  Id.  The trial court reiterated, "I'm okay with that as long as you guys are," and both defense counsel and the prosecutor were amenable to the course suggested by the trial court.  Id. at 830-831.  The fact that the trial court suggested a course of action to avoid an hour-long delay at trial did not violate Jury's constitutional rights; nor did defense counsel's willingness to proceed in this manner.  And Jury does not articulate why he was harmed by testifying before Dr. Forney.  He only claims that, had he heard Dr. Forney's "favorable" testimony, it was "more likely than not" he would not have testified.  Doc. 17, p. 27.  But Dr. Forney is a toxicologist and testified about the victim's toxicology report, Doc. 8-2, p. 872, testimony that Jury knew about because his trial counsel included it in his opening statement.  Doc. 8-2, pp. 118 ("we're going to have testimony in this case that [the victim] had a hundred dollar to $200 per day heroin habit, and we're going to find out that she had used heroin recently, probably that morning.  I think that's the evidence that Dr. Forney will give to you, that this was recent heroin use."), p. 127 ("And Dr. Forney will come in here and testify from the Lucas County Coroner's Office that she had illegal substances consistent with heroin, recent heroin use, in her system.").

29

Jury's assertions are further belied by the record.  The following sidebar exchange makes clear that Jury was not "compelled" to testify and that he was not undecided about whether to testify:

> [Defense counsel] MR. BRADLEY: I just wanted the record to be clear that I advised Brian Jury that he has a right to either testify or not testify and that I went out to the jail yesterday and discussed with him whether he should testify or not testify and – but I told him that it had to be his independent decision as to whether he should testify or not, and he informed me that he would -- he chose to testify. I just wanted the record to be clear that I did advise him that that was his choice, not mine. I certainly recommended to him that he testify, but I let him make the final decision, and the Court may want to inquire of him –
>
> COURT: Okay.
>
> MR. BRADLEY: -- as to whether or not that was –
>
> COURT: Okay. You -- you stay here and I'll inquire (inaudible). Now, you understand you have a Constitutional right not to testify, and if you choose not to testify, I will tell the jury that they can't hold that against you. Additionally, the State of Ohio cannot comment on the fact that you did not testify. Attorney Bradley says that he went out to the jail yesterday and discussed this with you and that this was your choice to testify. He had suggested you may want to, but the final choice is yours because it's your Constitutional right and not his.
>
> MR. JURY: That's correct.
>
> COURT: And you do want to testify; therefore, giving up your right, your Constitutional right not to testify?
>
> MR. JURY: Yes, sir.
>
> COURT: And you understand you'd be subject to cross examination obviously by the State of Ohio in this matter?
>
> MR. JURY: Yes, sir.
>
> COURT: Okay.
>
> MR. BRADLEY: Thank you.
>
> COURT: Your attorney just wanted that on the record, okay?

Doc. 8-1, pp. 833-835.

Ground 5 fails on the merits.

**F. Ground 6 is procedurally defaulted**

In Ground 6, Jury argues that he was subject to cruel and unusual punishment when he was sentenced because the trial court failed to make specific findings of fact before imposing consecutive sentences; his sentence was based on bias and prejudicial findings which have been proved wrong; and his sentence was excessive, unreasonable, and contrary to law.  Doc. 1, p. 13.

Ground 6 is procedurally defaulted because Jury only presented these claims to the Ohio Court of Appeals as a violation of state law, not as federal constitutional claims.  On direct appeal, Jury argued that the trial court failed to make specific findings of fact as required by R.C. 2929.14 (Doc. 8-1, pp. 174-176) and that Jury's sentence was excessive, unreasonable, and contrary to law in that it should have been concurrent rather than consecutive sentences (Doc. 8-1, pp. 176-178 (citing R.C. 2929.11 and 2929.12)).  The Ohio Court of Appeals affirmed Jury's conviction and sentence (Doc. 8-1, pp. 259-262) and Jury did not appeal.  His failure to appeal constitutes procedural default as does the fact that he did not present these claims as federal constitutional violations.  *McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir. 2000) (a petitioner does not fairly present a claim to the state courts if he relies on the applicability of state laws rather than a federal constitutional right).  And, although Jury raised a sentencing error in his post-conviction petition, he did not describe that error as a federal constitutional error (Doc. 8-2, pp. 353-354), and he did not appeal the trial court's denial of his petition, committing yet another form of procedural default.  *See Williams*, 460 F.3d at 806 (a petitioner must pursue his claim through the state's ordinary appellate review procedures or it is procedurally defaulted).

Jury does not assert cause or prejudice to excuse these procedural defaults, stating, "Petitioner sees no need to apply cause and prejudice."  Doc. 17, p. 28.  Instead, he submits that a fundamental miscarriage of justice will continue to occur if the Court does not review this

claim. Id. He incorporates by reference arguments he made in his post-conviction petition to contend that the evidence that supported the sentence was false. Id. (citing Doc. 8-1. 353-354). Jury's assertion is belied by the record. First, the trial court accurately characterized Jury's past conviction as a disorderly conduct conviction, not assault, as Jury had alleged. See Doc. 8-1, p. 353, Doc. 8-7, pp. 34, 39 (sentencing transcript). Second, to the extent the trial court referenced a dishonorable discharge from the military (Doc. 8-7, pp. 31-32), it commented that Jury himself stated during his bond hearing that he had gone AWOL and had been dishonorably discharged, but the trial court remarked that it found no record of charges brought against Jury and referred to Jury's military service as a positive aspect of his life (Doc. 8-7, p. 34). Moreover, Jury himself informed this Court in his brief in support of his Petition that he went AWOL from the military. Doc. 1-1, p. 12. In other words, Jury does not show that the trial court's findings were false.

Finally, as the Ohio Court of Appeals observed, the trial court sentenced Jury to consecutive sentences for the following reasons:

> I think that a bound, gagged, hogtied, naked female left in a trailer that you even talked about when the trailer, you got there, it was cold, that you gave her a blanket and that you had to warm up your own hands because it was so cold in there. Leaving her like that and for her to have to crawl out of it, roll up off the yard, up the stones, and onto the middle of a highway, or a road I should say, where the speed limit's 55, and lay there and hope, hope that you're not coming back to kill her, because, according to her version, you had told her that if she moved, your cell phone would go off and you'd be right back. Just hope that somebody else would come by to save her. The Court finds that that conduct is outrageous, just outrageous for one human being to do that to another human being. So the seriousness of your conduct, one single penalty would not adequately reflect that.
> Additionally, not only abduction, the rapes, and I've talked about the violent nature of the rapes, but also the zip ties and the gagging and putting the Kleenex in the mouth and everything else or tissue, if you will, in the mouth and then duct taping around that, all that, the Court finds that consecutive sentences are necessary.

Doc. 8-1, pp. 261-262 (quoting the trial court's sentencing transcript); Doc. 8-7, pp. 44-45 (sentencing transcript).

Jury does not show a miscarriage of justice to overcome his procedural default.

**G. A portion of Ground 7 is not cognizable and the remainder is procedurally defaulted**

In Ground 7, Jury lists the following sub-claims: (1) appellate counsel's failure to have vior dire and preliminary hearings transcribed deprived Jury of the means to support potential claims; (2) Jury's due process rights were violated because he was prevented from presenting evidence to the courts and counsel; (3) the state courts promoted unfairness with respect to the lack of probable cause for his initial arrest; and (4) Jury was prejudiced by the cumulative effect doctrine.  Doc. 1, p. 15.

As for (1), the undersigned considered this claim when discussing Ground 4, supra, and explained that it is procedurally defaulted and/or fails on the merits.  As for (2), Jury does not describe what evidence he was prevented from presenting to the courts and his counsel.  Thus, he has failed to properly plead his claim per Rule 2(c)(2) of the Rules Governing Section 2254 Cases; he has also procedurally defaulted this claim because he did not present such a claim to the Ohio courts.  The undersigned discussed (3), supra, when it considered Ground 1.  Finally, (4) is not cognizable because the cumulative effect doctrine is not available on federal habeas review.  *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011).

**H. Jury's motion for evidentiary hearing, discovery and counsel is denied.**

Jury filed a motion requesting an "evidentiary hearing, discovery and/or counsel."  Doc. 9, p. 2.

28 U.S.C. § 2254(e) provides,

(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

(2) If the applicant has failed to develop the factual basis of a claim in State court

proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

> (A) the claim relies on—
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

In support of his request, Jury details what evidence he believes exists that would support the grounds in his Petition.  Doc. 9, pp. 2-15.  However, as discussed above, Jury's grounds are procedurally defaulted, fail on the merits, and/or are not cognizable.  Disagreement about the route Jury drove when he picked up the victim and how many times he could have raped her in the time span shown at trial, as Jury proposes (e.g., Doc. 9, pp. 3, 5), is not convincing evidence that, but for constitutional error, no reasonable factfinder would have found him guilty of the underlying offenses.  § 2254(e)(2)(B).

Jury's motion is denied.

**IV**. **Conclusion and Recommendation**

For the reasons stated above, the undersigned recommends that Jury's Habeas Petition be

**DISMISSED** in part and **DENIED** in part because Grounds 1, 2, 3, 6, and a portion of Grounds

4 and 7 are procedurally defaulted, the remainder of Ground 7 is not cognizable, and Ground 5

and the remainder of Ground 4 fail on the merits.  Jury's Motion for evidentiary hearing,

discovery and counsel (Doc. 9) is **DENIED**.


Dated: October 13, 2017

_____
Kathleen B. Burke
United States Magistrate Judge


**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts
within fourteen (14) days after the party objecting has been served with a copy of this Report and
Recommendation.  Failure to file objections within the specified time may waive the right to
appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee
also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).